IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| AMY R. PRICE,[1] | § | |
| | § | No. 94, 2014 |
| Petitioner-Below, | § | |
| Appellant, | § | |
| | § | |
| v. | § | Court Below:  Family Court |
| | § | of the State of Delaware |
| L. BRAD BOULDEN, | § | in and for New Castle County |
| | § | File No. CN04-06244 |
| Respondent-Below, | § | Petition No. 13-18909 |
| Appellee. | § | |

Submitted:  June 19, 2014
Decided:    July14, 2014

Before **STRINE**, Chief Justice, **HOLLAND** and **RIDGELY**, Justices.

## **ORDER**

This 14th day of July 2014, upon consideration of the appellant's opening brief and the appellee's motion to affirm, it appears to the Court that:

(1)    The petitioner below-appellant, Amy R. Price (the "Mother"), filed this *pro se* appeal from the Family Court's February 14, 2014 order denying her petition to modify custody with respect to the parties' minor children ("the children"), Beverly Price[2] (born in June 2003) and Brian Price (born in October 2007).  The respondent below-appellee, L. Brad Boulden (the "Father"), filed a *pro se* motion to affirm the judgment below on the ground that it is manifest on the

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

[2] We also hereby assign pseudonyms to the parties' minor children.

face of the Mother's opening brief that her appeal is without merit.[3] We agree and affirm.

(2) On January 18, 2011 the Mother filed a petition to relocate and a petition to modify custody. The Father filed a petition to modify custody on January 28, 2011. After a consolidated hearing on the parties' petitions to modify custody and the Mother's motion for relocation, the Family Court entered an order, dated June 13, 2011, ruling that the parties would continue to share joint legal custody over the children and granting the Father primary residential custody due to the Mother's relocation to Virginia. The Family Court found it to be in the children's best interest to remain together and to leave Beverly's schooling unchanged. Thus, the Father was awarded primary residential custody of the children during the school year and the Mother was granted residential custody for all but two weeks of the children's summer vacation from school and granted visitation during the children's spring break, winter break, and on weekends.

(3) On December 3, 2012, the Mother filed a petition to modify custody. Because the Mother's petition was filed within two years of the Family Court's June 13, 2011 Order, which was entered after a full hearing, the Mother's petition was governed by 13 *Del. C.* § 729(c)(1), which would only allow modification of the order if the Family Court determined that enforcing the order would endanger

---

[3] Supr. Ct. R. 25(a).

the children's physical health or significantly impair their emotional development. At the beginning of the February 28, 2013 hearing on her petition, the Mother admitted that she did not have sufficient evidence to satisfy the requirements of 13 *Del. C.* § 729(c)(1). But, the parties agreed to certain modifications to the June 13, 2011 order — including that the Mother would have visitation with the children for three weekends every month and that the parties would share residential placement for the summer, rotating on a week by week basis — which were memorialized in an order dated February 28, 2013. .

(4)  On June 14, 2013, the Mother filed another petition to modify custody.[4] The Mother sought shared residential placement of the children on a week on, week off basis. The Family Court held a hearing on November 22, 2013 and heard testimony from the Mother, the Father, the maternal grandfather, and an employee of the Elkton Housing Authority. At the hearing, the Mother testified that because the children were not allowed to move to Virginia with her in 2011, she moved back to the area as soon as she could. At the time of the hearing, the Mother lived in a townhome in Elkton, Maryland operated by the Elkton Housing Authority. On February 14, 2014, the Family Court issued an order denying the Mother's petition and providing that the Mother and the Father would continue to exercise joint legal custody, the Father would have primary residential placement

---

[4] Because that petition was filed two years and one day after the June 13, 2011 order — the last order entered after a full hearing — this petition was not governed by 13 *Del. C.* § 729(c)(1).

3

of the children, and the Mother's visitation with the children would continue as set forth in the Family Court's February 28, 2013 order.

(5) In reaching this decision, the Family Court found that all of the factors under 13 *Del. C.* § 722 were neutral, except for the fourth factor: "[t]he child's adjustment to his or her home, school and community."[5] The Court concluded this factor weighed against the Mother's petition because the children would have to change schools or share a bedroom with another of the Mother's children when they were with the Mother. This was because the Elkton Housing Authority witness testified that the Mother was not eligible to maintain her four-bedroom townhome in Elkton unless she had primary residential placement of the children, which in turn would mean that the children would have to leave their current school and enroll in Elkton schools. If the Mother did not have primary residential placement of the children and instead shared residential placement with the Father as she was requesting, then the Elkton Housing Authority would require her to move into a two-bedroom apartment and Beverly and Brian would have to share a bedroom with her other child during the weeks they resided with the Mother. The Family Court found that it was in the best interests of the children for them to remain in their current schools and that it would not be in the best interests of the children to share a bedroom with the Mother's other child every other week. Thus,

---

[5] 13 *Del. C.* § 722(a)(4).

the Family Court concluded that maintaining the current arrangement was in the best interests of the children.

(6)     On appeal, the Mother appears to argue that: (1) the Family Court disregarded her expressed intention of moving to Delaware and erred in concluding that her three children would have to occupy one bedroom every other week if she and the Father split residential custody; and (2) this Court should reconsider her petition to modify custody because, as of June 30, 2014, she occupies a three bedroom townhome in the children's school district.

(7)     This Court's review of a Family Court decision includes a review of both the law and the facts.[6]  Conclusions of law are reviewed *de novo*.[7]  Factual findings will not be disturbed on appeal unless they are clearly erroneous.[8]

(8)     Under Delaware law, the Family Court is required to determine legal custody and residential arrangements for a child in accordance with the best interests of the child.[9]  The February 14, 2014 order reflects that the Family Court

---

[6] *Mundy v. Devon,* 906 A.2d 750, 752 (Del. 2006).

[7] *Id.*

[8] *Id.*

[9] 13 *Del. C.* § 722.  An application for modification of a custody or primary residence order filed more than two years after a prior order that was entered after a hearing on the merits is governed by 13 *Del. C.* § 729(c)(2).  Under Section 729(c)(2), the Family Court considers the best interests of the child under Section 722, as well as whether the child is likely to suffer harm if the prior order is modified and the compliance of the parents with prior court orders.  Although the Family Court did not explicitly address whether all of the Section 729(c)(2) factors favored granting of Mother's petition, it determined that granting Mother's petition was not in the best interests of the children under Section 722.

5

carefully reviewed all of the factors set forth in 13 *Del. C.* § 722. That order also reflects that the Family Court was aware of the Mother's intention to look for new housing in Delaware. There is no indication in the available record that the Mother had housing with a sufficient number of bedrooms in the children's school district at the time of the November 22, 2013 hearing or the February 14, 2014 order.[10] Although the Mother has represented to this Court that she obtained a new residence — which has three bedrooms and is located in her children's school district — as of June 30, 2014, this evidence was not available to the Family Court in the first instance, is outside of the record on appeal, and cannot properly be considered by this Court.[11]

(9) Cases of this kind are typically difficult, as recognized by the Family Court which found that both the Mother and the Father are appropriate and loving

---

[10] The Mother had the burden of supplying a transcript of the November 22, 2013 hearing, Supr. Ct. R. 9(e)(ii); Supr. Ct. R. 14(e); *Trioche v. State*, 525 A.2d 151, 154 (Del. 1987), but she chose not to obtain one after the Family Court denied her motion to waive the transcript fee. A civil litigant does not have an absolute right to obtain a copy of a transcript at State expense. *Mahan v. Mahan*, 2007 WL 1850905, at *1 (Del. June 28, 2007). Even an appellant who is permitted to proceed *in forma pauperis* on appeal is required to make his or her own financial arrangements to obtain the necessary transcripts. In the absence of a transcript of the November 22, 2013 hearing, this Court lacks an adequate basis for evaluating Mother's claim that the Family Court erred in concluding that her three children would have to occupy one bedroom every other week if she and Father split residential custody. Furthermore, Mother has not indicated that any evidence was presented at the November 22, 2013 hearing that would contradict the Family Court's factual finding.

[11] *Delaware Elec. Coop., Inc. v. Duphily*, 703 A.2d 1202, 1206 (Del. 1997) (stating "[i]t is a basic tenet of appellate practice that an appellate court reviews only matters considered in the first instance by a trial court" and striking materials from appendix that were outside of record on appeal)*; see also Zappa v. Logan*, 2013 WL 4538215, at *1 (Del. Aug. 23, 2013) (finding appellant's explanation for missing hearing and evidence to refute allegations of abuse were outside record and would not be considered on appeal).

caregivers. Although we empathize with the Mother's continued efforts to be closer to her children and more involved in their lives, the Mother has not identified any error on the part of the Family Court that would justify reversal. It is apparent from the Family Court's thoughtful opinion and order that the Family Court carefully reviewed the evidence that was before it, made factual findings that are supported by the record, and applied the correct legal standard in making the difficult decision to deny the Mother's petition to modify the custody order. As a result, we must defer to its decision.[12] It is therefore manifest from the opening brief that this appeal is without merit and should be dismissed.

NOW, THEREFORE, IT IS ORDERED that the motion to affirm is GRANTED and the judgment of the Family Court is AFFIRMED.

BY THE COURT:

*/s/ Leo E. Strine, Jr.*

Chief Justice

---

[12] *See, e.g., Clark v. Clark*, 47 A.3d 513, 517-51 (Del. 2012) (deferring to the Family Court's factual finding that a custody arrangement was in the best interests of the children).